LANCE GOLDSTEIN, Plaintiff-Appellant, v. STEVEN LUSTIG, Defendant-Appellee.

First District (1st Division)   No. 85—1868

Opinion filed April 6, 1987.

Donald A. Shapiro, of Donald A. Shapiro, Ltd., of Chicago, for appellant.

D. Kendall Griffith, Thomas L. Browne, and Lynn D. Dowd, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from a dismissal of a complaint pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619). On appeal plaintiff argues that the court erred: (1) in ruling that his complaint failed to

state a cause of action for legal malpractice; (2) in ruling that defendant's conduct was an error of judgment rather than negligence; (3) in ruling that plaintiff was precluded from filing suit against his former attorney by virtue of the settlement of litigation between the plaintiff and his employer; and (4) in denying plaintiff's motion to amend his complaint.

The following facts are pertinent to this appeal. Plaintiff Dr. Lance Goldstein (Goldstein) was employed by Endodontic & Periodontic Associates, Ltd. (corporation), as a dentist from February 1, 1977, through January 31, 1982. In spring of 1981, Goldstein became involved in a dispute with the corporation. The dispute arose out of allegations that he had allowed an attorney access to corporate billing letterheads which the attorney had allegedly used to generate fraudulent billing statements for submission to an insurance carrier.

On or about July 1, 1981, Goldstein took his employment agreement to defendant, Steven Lustig (Lustig), an attorney, told him that the corporation had valid grounds to terminate him for misconduct and asked his legal advice as to the best course of conduct. Paragraph 8 of the agreement provided that if the doctor was terminated by the corporation for cause, pursuant to paragraph 2 he would be entitled only to the benefits set forth in paragraph 8(b). If he resigned on his own option, he would be entitled to the benefits set forth in paragraphs 8(c) and 8(d) as well as those set forth in paragraph 8(b).

Lustig advised Goldstein that it would not make any difference what he did and that if he waited and allowed himself to be terminated, he could then sue the corporation. Goldstein took Lustig's advice, was terminated and filed suit against the corporation. During the course of the litigation, Lustig advised Goldstein to settle the litigation. Goldstein and the corporation signed a consent decree, a mutual release, and a settlement agreement.

Goldstein then filed a professional malpractice action against Lustig, alleging that Lustig had negligently and carelessly misinterpreted and misadvised him as to the legal ramifications of his employment agreement.

Defendant filed a motion to dismiss pursuant to section 2—615 (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) or alternatively, section 2—619. Attached as exhibits to the section 2—619 motion were the following documents from plaintiff's action against the corporation: a complaint for declaratory judgment with exhibits, plaintiff's second amended complaint; a counterclaim asserted by the employer; a motion to compel and for sanctions; the consent decree; the mutual release and the settlement agreement.

The exhibits reveal that following Goldstein's termination, he instituted an action against the corporation for wrongful discharge. Defendant remained his general counsel; however, he was represented by a separate law firm in that action. Pursuant to the mutual release, each party was forever released from any claims relating to the employment agreement, to Goldstein's ownership of corporation stock, and to Goldstein's lawsuit against the corporation. Under the settlement agreement, Goldstein and the corporation agreed that all of the obligations owed under the employment agreement were satisfied and that Goldstein would receive full benefits from the retirement and profit-sharing plans and an additional $30,000.

Goldstein filed a memorandum in opposition to defendant's motion to dismiss this case. Attached to the memorandum was a copy of his original complaint, an excerpt from the deposition of Richard Krause, a copy of the employment agreement, a copy of the letter from the corporation, and his own affidavit.

Goldstein's memorandum states that he told defendant that his former employer had valid grounds to believe that he was engaged in an insurance fraud scheme and that defendant advised him to sue his employer in order to force a settlement. Goldstein verified in his affidavit that he participated in an insurance fraud scheme, that because the lawsuit filed had little if any merit he had to settle with his employer, and that following his discharge, his employer owed him no resignation benefits.

Defendant's motion to dismiss pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure was granted and plaintiff now brings this appeal.

Plaintiff first contends that the trial court erred in ruling that his complaint failed to state a cause of action for legal malpractice.

■■ In order to state a cause of action for attorney malpractice, a client must plead facts establishing the existence of an attorney-client relationship, the breach of a duty owed by virtue of that relationship, and that such negligence was the proximate cause of injury or loss to the client. *Cook v. Gould* (1982), 109 Ill. App. 3d 311, 314, 440 N.E.2d 448.

■■ When a motion to dismiss is filed pursuant to section 2—615, the court must consider the legal sufficiency of the complaint based only on the allegations of the complaint. (*Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 509, 439 N.E.2d 60.) Exhibits attached to a complaint become a part of the complaint and factual matters contained in the exhibits which are inconsistent with the allegations serve to negate such allegations. *Sharkey v. Snow* (1973), 13 Ill. App. 3d

449, 451, 300 N.E.2d 279.

A motion to dismiss is not deemed to have admitted any allegations of the complaint which are in conflict with the facts set forth in the exhibits attached to the complaint. A complaint is properly dismissed when it does not contain sufficient allegations to set forth a cause of action. (*Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 452, 411 N.E.2d 1067.) We believe that plaintiff here can plead no set of facts that will establish the element of cause required for a legal malpractice action, and therefore the complaint was properly dismissed.

If the corporation had cause to discharge the plaintiff, he would not be able to enforce the contract and recover benefits, regardless of whether he resigned or waited to be terminated. Under contract law, a party seeking to enforce the contract has the burden of proving that he has substantially complied with all the material terms of the agreement. (*George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.* (1975), 32 Ill. App. 3d 249, 254, 336 N.E.2d 185.) A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract. *Robinhorne Construction Corp. v. Snyder* (1969), 113 Ill. App. 2d 288, 297, 251 N.E.2d 641, *aff'd* (1971), 47 Ill. 2d 349, 265 N.E.2d 670.

In our opinion plaintiff's use of the corporate books and records to further an insurance fraud scheme constitutes a material breach of the employment agreement. Thus even if plaintiff had resigned, he would not have been entitled to enforce the contract against the corporation in order to receive the resignation benefits.

Plaintiff cites *Lamphere v. Old Second National Bank* (1976), 39 Ill. App. 3d 610, 350 N.E.2d 272, *appeal denied* (1976), 63 Ill. 2d 557, as support for his theory that he would have been entitled to collect the resignation benefits had he resigned before the corporation could discharge him. In *Lamphere*, plaintiff, the vice-president of the defendant's bank, was discovered to have been embezzling company funds. After the board of directors voted to discharge plaintiff, but before they had actually done so, he resigned.

The plaintiff then brought suit to recover his benefits in the bank's profit-sharing trust. Defendant argued that the plaintiff had forfeited his rights to these benefits because the profit-sharing plan provided that an employee would not receive benefits if he were dismissed for cause. The appellate court disagreed and held that since the plaintiff had resigned, he was entitled to his benefits.

*Lamphere* is not contrary to the rule of law prohibiting a party

who has breached a contract from later benefitting from its provisions. The *Lamphere* court reached the result it did based on its knowledge that under a bonding company's judgment, the proceeds of plaintiff's judgment would operate to effect restitution rather than accrue to plaintiff's direct benefit. (*Lamphere v. Old Second National Bank* (1976), 39 Ill. App. 3d 610, 613, 350 N.E.2d 272, *appeal denied* (1976), 63 Ill. 2d 557.) No similar circumstance exists here.

Alternatively, if Goldstein had been discharged without cause, under Illinois law he would have an action against the corporation for wrongful or retaliatory discharge. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 184, 384 N.E.2d 353; *Claeson v. Hennessey* (1959), 20 Ill. App. 2d 437, 445, 156 N.E.2d 234.) Recovery would include the value of lost benefits under the employment contract. (See, *e.g., Schwarze v. Solo Cup Co.* (1983), 112 Ill. App. 3d 632, 641, 445 N.E.2d 872, *appeal denied* (1983), 94 Ill. 2d 558.) Thus if no cause existed for plaintiff's termination, defendant's advice to wait for termination would not have precluded him from recovering his resignation benefits. Therefore even under this set of facts plaintiff cannot establish the necessary causation.

We now turn to plaintiff's claim that the court erred in ruling that the defendant's conduct was an error in judgment rather than negligence.

As the court explained in *York v. Stiefel* (1982), 109 Ill. App. 3d 342, 350, 440 N.E.2d 440, *aff'd in part & rev'd in part* (1983), 99 Ill. 2d 312, 458 N.E.2d 488:

> "Attorneys are retained to exercise their judgment on behalf of their clients in areas where there are no sure and definite answers and attorneys cannot always determine future courses of action by precise mathematical equations. Criticism in hindsight of one of many courses of action is not probative of negligence and the mere opinion by a particular attorney that the defendant's course of action [was] not the same as that which the expert [attorney] might have chosen is not testimony probative of malpractice."

Illinois adheres to the rule that an attorney is not liable to his client for errors in judgment, but only for failing to exercise a reasonable degree of care and skill, notwithstanding that the exercise of that judgment may have led to an unfavorable result for the client. *Smiley v. Manchester Insurance & Indemnity Co.* (1978), 71 Ill. 2d 306, 313, 375 N.E.2d 118.

In our opinion, the trial court did not err in ruling that the complaint in issue at most alleges an error in judgment. Defendant

had to exercise his judgment based on an evaluation of what plaintiff had told him about the employment dispute, the terms of the contract, the applicable law, and any alternative remedies plaintiff might have. He also had to take into consideration that resignation would bind plaintiff to a restrictive covenant which would not be the case if he was wrongfully terminated.

Plaintiff has raised the issue that the defendant, as the party moving for dismissal, had the burden of presenting expert testimony as to the standard of care required of an attorney. He cites *Spivack, Shulman & Goldman v. Foremost Liquor Store, Inc.* (1984), 124 Ill. App. 3d 676, 683, 465 N.E.2d 500, and *Brown v. Gitlin* (1974), 19 Ill. App. 3d 1018, 1020, 313 N.E.2d 180, *appeal denied* (1974), 56 Ill. 2d 586, in support of his argument that the question of whether an attorney has exercised a reasonable degree of care and skill is one of fact which must be measured by expert testimony.

■ The question of whether expert testimony is required on a motion to dismiss a complaint for attorney malpractice was recently addressed in *Schnidt v. Henehan* (1986), 140 Ill. App. 3d 798, 489 N.E.2d 415. In *Schnidt*, the plaintiffs had argued that they had no duty to produce an expert to defeat a motion to dismiss on the pleadings. The court stated that it was unaware of any case law that requires a plaintiff to produce an expert witness in order to defeat a motion to dismiss. The court noted that a section 2—615 motion to dismiss attacks only the sufficiency of the pleadings and should be decided only upon the allegations set forth therein. (*Schnidt v. Henehan* (1986), 140 Ill. App. 3d 798, 802, 489 N.E.2d 415.) Because only the pleadings are in issue, there is similarly no burden on the defendant to present expert testimony as to the standard of care required of an attorney in order to succeed on his motion to dismiss.

Plaintiff also challenges the court's ruling that his complaint was barred by affirmative matter pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619). He contends that irrespective of the release of the corporation he still has suffered damages because he would not have had to file a lawsuit in the first place if defendant had read the contract correctly. In our opinion, plaintiff assumes too much.

In plaintiff's memorandum and affidavit filed in opposition to defendant's motion to dismiss, plaintiff admits that he permitted an attorney friend to use the corporation's billing letterheads to generate fraudulent insurance claims. He also admits that once he was discharged, the corporation owed him no resignation benefits. The exhibits show that plaintiff could never demonstrate that he was wrong-

fully discharged. In that situation, under Illinois law he would not have been entitled to enforce the contract against the corporation in respect to the resignation benefits.

Even if we were to assume that plaintiff was entitled to enforce the contract against the corporation, evidence in the record shows that plaintiff has already recovered all the benefits that he would have been entitled to had he resigned. Thus plaintiff cannot establish that he suffered actual pecuniary loss based on defendant's alleged negligent advice, which is a necessary element to a cause of action for attorney malpractice. See *Chicago Red Top Cab Association, Inc. v. Gaines* (1977), 49 Ill. App. 3d 332, 333, 364 N.E.2d 328.

In his suit against the corporation, plaintiff was represented by separate trial counsel. He chose to settle with the corporation and agree that the terms of his employment contract had been fulfilled. If the terms were not fulfilled, it is not the fault of defendant, and plaintiff cannot now seek to recover from defendant a monetary award that he had already received pursuant to the settlement.

Additional affirmative matter also negates plaintiff's claim that on the basis of defendant's advice, he elected not to exercise his opportunity to resign and was consequently damaged. Although plaintiff argues in his brief that he was given the option of resigning rather than being discharged, the record does not support this claim.

Plaintiff cites deposition testimony by Dr. Richard Krause, a managing partner in the corporation, in which Krause purportedly advised him to resign voluntarily. When read in its entirety, however, the testimony shows that Krause was not speaking for the board and was advising Goldstein only as a friend.

In challenging the dismissal of his complaint pursuant to section 2—619, plaintiff also contends that his dismissal for cause by the corporation does not render his legal malpractice complaint factually defective. He argues that he has never admitted to any acts of misconduct nor have any of the corporation's allegations been proven and therefore defendant's argument that as a fraudfeasor he cannot recover from an attorney for allegedly negligent advice is erroneous.

Irrespective of whether Goldstein had been convicted of fraud, his own memorandum of law in opposition to defendant's motion to dismiss states that his employer had valid grounds to believe that he was engaged in an insurance fraud scheme. Knowing that he was not entitled to any resignation benefits following his discharge for cause, he filed suit for wrongful discharge. Having failed to recover additional benefits from the corporation, he then filed suit against defendant in a further attempt to recover monetary relief to which he was not enti-

tled under his employment agreement.

■■ ■ The courts of Illinois have a long-established rule that they will not aid a fraudfeasor who invokes the court's jurisdiction to relieve him of the consequences of his fraud. (*Mettes v. Quinn* (1980), 89 Ill. App. 3d 77, 80, 411 N.E.2d 549.) Since the basis of plaintiff's action in the present case is an attempt to reduce the economic consequences of his fraudulent conduct by recovering from his attorney, we hold that the trial court did not err in dismissing his complaint with prejudice.

■■ ■ Plaintiff's final argument is that the trial court improperly denied his oral motion to amend his complaint. He urges that the trial court was under the incorrect impression that defendant had read the agreement but had advised plaintiff that resignation would have the same effect as termination because that was his legal opinion about the matter. He now argues that he should have been allowed to amend his complaint to make it clear that the basis of his complaint was that Lustig was unaware of the different consequences of resignation versus termination as a result of the failure to read or the negligent reading of the contract.

Although the general rule is that leave to amend should be liberally granted, the trial court has broad discretion to permit or refuse amendments and we will review only a manifest abuse of such discretion. (*Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, 285, 170 N.E.2d 147, *cert. denied* (1961), 365 U.S. 879, 6 L. Ed. 2d 191, 81 S. Ct. 1029.) The burden is on the plaintiff to show a clear abuse of discretion. (*Anthony v. Gilbrath* (1947), 396 Ill. 125, 127-28, 71 N.E.2d 84.) The plaintiff here cannot meet his burden of establishing that the trial court abused its discretion by denying leave to amend his complaint, nor did he raise the argument in his brief on appeal. Therefore, the argument is waived. 87 Ill. 2d R. 341(e)(7).

We note, moreover, that the record does not reflect that plaintiff tendered a proposed amended complaint which would have given the trial court an opportunity to rule on whether plaintiff could state a cause of action for attorney malpractice. Nor did plaintiff file a report of proceedings with this court. Plaintiff instead filed his original complaint with the trial court and then a notice of appeal, in effect electing to stand on his original complaint. Under these circumstances, we must assume that the trial court did not err, that the plaintiff was not prejudiced, and that the court did not abuse its discretion. *Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, 285, 170 N.E.2d 147, *cert. denied* (1961), 365 U.S. 879, 6 L. Ed. 2d 191, 81 S. Ct. 1029; *Deasey v. City of Chicago* (1952), 412 Ill. 151, 156, 105 N.E.2d 727.

For the foregoing reasons, the dismissal of plaintiff's complaint with prejudice by the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and STAMOS, JJ., concur.